UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYMIE EILEEN MARIE CARNEY,<br><br>  Plaintiff,<br><br>  v.<br><br>ANDREW SAUL,<br><br>  Defendant. | Case No.  19-cv-04265-WHO<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Dkt. Nos. 18, 19 |

Plaintiff Jaymie Eileen Marie Carney applied for Supplemental Security Income ("SSI") and Child Disability Benefits under Titles II and XVI of the Social Security Act in 2013.  Having finally reached this court, she moves for summary judgment because of several material errors by the Administrative Law Judge (ALJ).  The Commissioner cross-moves for summary judgment. The record is fully developed and the ALJ failed to provide legally sufficient reasons for rejecting significant evidence.  If the improperly discredited evidence were credited as true, the ALJ would be required to find Carney disabled on remand; there is no serious doubt that she is disabled. Carney's motion for summary judgment is GRANTED, defendant's motion for summary judgment is DENIED, and the case is remanded solely for calculation and payment of benefits.

## BACKGROUND

### I.     PROCEDURAL HISTORY

On March 6, 2013, Carney applied for SSI and Child Disability Benefits under Titles II and XVI of the Social Security Act.  Administrative Record ("AR") 355-67, 364-67.  In both applications, she alleged that her disability began January 1, 2007. AR 355, 364.[1]  On July 25,

---

[1] Carney filed a prior application for child disability benefits, which was denied in August 2012.

2013, the Social Security Administration denied the claim initially and denied it upon reconsideration on March 17, 2014. AR 198, 212-217.  On April 20, 2015, Carney and her counsel appeared for a hearing in front of an ALJ.  AR 72.  On August 19, 2015, the ALJ issued her initial decision finding Carney was not disabled.  AR 168-78.  Carney timely requested review of the ALJ decision by the Appeals Council, which granted review and remanded the case for the ALJ to evaluate the opinion of Carney's treating psychiatrist Dr. Michael Loose, and if warranted, obtain supplemental evidence from a Vocational Expert ("VE").  AR 186-88.  At a second hearing, held on August 16, 2017, Carney and a VE testified.  AR 29-72.  On January 25, 2018, the ALJ issued her second decision concluding that Carney was not disabled.  AR 10-21.  On June 10, 2019, the Appeals Council's denied review and Carney sought review here.

Carney moves for summary judgment, arguing the ALJ erred by: (i) improperly rejecting opinions of examining physicians Dr. Kiefer and Dr. Cushman and treating psychiatrist Dr. Loose; (ii) improperly rejecting the opinion of Marriage and Family Therapist ("MFT") Hall and not properly evaluating her assessment; (iii) failing to give germane reasons for rejecting the lay witness testimony of Carney's mother Rhonda Carney; (iv) failing to reject Carney's subjective testimony by clear and convincing reasons supported by substantial evidence; and (v) failing to properly assess Carney's residual functional capacity ("RFC") resulting in a finding at step five that is not supported by substantial evidence.  The Commissioner cross-moves for summary judgment, arguing the ALJ's decision is supported by substantial evidence in all respects.

## II.      CARNEY'S IMPAIRMENTS

Carney alleges disability based on attention deficit disorder ("ADD"), anxiety disorder, depressive disorder, and Tourette's disorder.  AR 117.  She was born in 1991.  *Id*.  She graduated from high school in 2009 and attended community college from 2009 and 2011.  AR 85, 460.  At community college, she earned 29 total credits for 16 courses: she failed four courses, withdrew from two, and had a cumulative GPA of 1.659.  AR 462.  She lives at home with her parents and a younger sister. AR 38, 85.

### A.      Subjective Evidence

Carney described a typical day as "getting up around eight, sometimes not until eleven,"

depending on the quality of her sleep.  AR 42.  She begins drawing soon after.  *Id.*  She gets along with her parents on her good days; however, she estimated having only one good day per week.  AR 42.  She has had no friends for a couple of years (AR 44); she explained during her first hearing that she has "little or no friends" because they would get into arguments and stop talking.  AR 93.

Carney may drive a car three or four times per week to get gas, pick up something from the store, or go to an appointment.  AR 46.  However, she has spoken to her counselor about road rage, stating that "I get agitated really easily…it's hard to deal with sometimes. I just get mad." AR 98.  She estimated that she spends about two or two and a half hours looking at social media on her computer, but also spends between five or six hours per day on the computer looking at pictures or listening to music.  AR 49-50.  She said that she does not go to the movies or read books.  *Id.*  AR 50.

Carney's mother, Rhonda Carney, prepares her meals and does her laundry.  AR 47.  Carney sometimes does chores around the house like putting away dishes or cleaning up after the family pets but needs constant reminders from her mother.  AR 88-89.  She does not cook or bake because she has a hard time following directions.  AR 91.  Carney's mother reminds her to bathe on a regular basis, because absent her mother's reminder, she would not since she "feel[s] like there's no point."  AR 47.  Carney testified that she regularly showers once a week only changing clothes after bathing.  AR 63.  She has gone as long as a month between showers.  *Id.*  This routine feels normal to her because in her mind it will be a "waste of clothes to just put something on for a day or two and throw it in the dirty clothes."  *Id.*  She testifies to not being able to clean her room, because she "[doesn't] know where to start."  *Id.*

When asked if she thought she could do a job involving a simple task where she was left to herself, she responded that, "I just know with my tendencies … I might … have everything fine for a bit but then something or someone will trigger something … and that's it."  AR 52.  She explained, "it won't just be like a short little … thing and that's it … [i]t'll be like a big rough patch that'll probably ruin the rest of my … career or job."  *Id.*  On the topic of her anger, she states that is easily frustrated and "go[es] from 0 to 60 in a matter of milliseconds."  AR 54.  She

3

testifies that she will also "stay mad at [something] for longer than the average person would and also if I get frustrated just enough, I don't even care if I'm at work … I would … start ba[wl]ing ." *Id.* Carney said that her rapid mood changes are "typical" and can be triggered by big and small events. AR 59.

Carney testified to cutting herself since 2010. AR 55. She explained that she does it to "divert [herself] from mental and emotional pain to having physical pain" and to "remind [herself]" of the reasons she was upset in the first place. *Id.*

On April 22, 2015, Carney's mother, Rhonda, submitted a "Statement of Claimant or Other Person" to the Social Security Administration regarding her daughter's conditions and limitations. AR 463-64. Rhonda spends every day with her daughter and testified that her daughter needs sustained supervision; "[she] needs constant reminders to do her chores" and "cannot follow through with anything." AR 463. Rhonda explained that Carney "will really only go [outside] by herself when I give her a clear errand to run." *Id.* Regarding her daughter's ability to follow directions, Rhonda testified that when she tried to cook in the past, Carney "burns the food" and has trouble following directions for baking. *Id.* When it comes to building and sustaining relationships, Rhonda stated that while her daughter has few friends, she has "driven most of them away with her anger and mean words," and that if the friend's "opinion doesn't match [Carney's], she cuts them off." *Id.*

Rhonda explained that her daughter's mood changes rapidly, that "she can appear happy and be very talkative […b]ut within a few hours, her mood will change from happy to angry." AR 463. Carney will then isolate herself in her bedroom not even coming out for meals. *Id.* She can stay in this mood for days only coming out to do chores and before immediately going back. *Id.* Rhonda also stated that her daughter gets overwhelmed and becomes angry when "we push her too hard with things that make her anxious, like cleaning her room." *Id.* Then Carney will resort to "cut[ing] herself on her arm or ankle." *Id.* Overall, Rhonda explained that as of 2015, she had not "seen a real improvement in her anxiety or mood swings during the last two years." *Id.*

**B.     Medical Evidence**

**1.     Dr. Kiefer**

Dr. John Kiefer examined Carney at the request of the Agency on July 10, 2012. AR 530-34.[2]  In his comprehensive psychiatric evaluation, Dr. Kiefer diagnosed Carney with "Dysthymia. Generalized anxiety disorder.  Attention deficit disorder.  Chronic motor tic disorder.  Personality disorder not otherwise specified, with borderline traits."  AR 533.  He assessed a GAF score of 60.[3]  *Id.*  He opined that the "likelihood of the claimant's mental condition improving within the next 12 months is poor."  AR 533-34.  He concluded that the following functional limitations result from Carney's mental impairments:

> The claimant's ability to understand, remember, and carry out very short and simple instructions is *fair*.  Her ability to understand and remember detailed and complex instructions is *poor*.  The claimant's ability to maintain attention and concentration is *fair*.  The claimant's ability to accept instruction from a supervisor and respond appropriately is *poor*.  Her ability to interact with coworkers is *poor*. The claimant's ability to sustain an ordinary routine without special supervision is *fair*.  The claimant's ability to complete a normal workday/work week without interruptions at a consistent pace is *fair* from a psychiatric standpoint.  The claimant's ability to deal with various changes in the work setting is *fair*.  The likelihood of the claimant emotionally deteriorating in the work environment is *high*. Based on the mental status examination, there was no evidence that the claimant was engaged in substance abuse at the time of the evaluation.

AR 534 (emphasis added).

**2.     Dr. Cushman**

On May 20, 2017, Carney was examined by Dr. Phillip Cushman, Ph.D., at the request of the Agency. AR 667-74.  Dr. Cushman administered multiple tests[4] and diagnosed Carney with:

---

[2] That examination was conducted in connection with Carney's prior application for childhood disability benefits.

[3] A GAF of 51-60 is defined as: "Moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (2000) (DSM-IV-TR) at 34.

[4] Dr. Cushman conducted the following tests: the Wechsler Adult Intelligence Scale IV, Trails A and B, the Wechsler Memory Scale IV, Childhood Autism Rating Scale-2, and Wide Range Achievement Test 4.  AR 672.

"Attention Deficit/Hyperactivity Disorder, combined type"; "Asperger's Disorder"; "Mathematics Disorder"; "Reading Comprehension Disorder"; "Tic Disorder, NOS";[5] "Overweight, R/O sleep apnea"; and assessed a GAF score of 60.  AR 674.  He noted that during his examination, Carney was "generally cooperative" and "generally able to respond to some direct questions with direct answers."  AR 670.

Dr. Cushman opined that Carney "does appear capable of performing simple and repetitive tasks in a work setting" however, she would have "difficulties independently, regularly attending, or consistently participating in a work setting."  AR 674.  He said that Carney would have a "difficult time" working a normal workday or work week and "special supervision would be required" and specifically included "extensive pre-vocational training activities to better prepare her for the work setting." *Id.*  He added that while Carney appeared capable of following "simple verbal instructions from supervisors, but not complex instructions," she would ultimately have "difficulties getting along with supervisors, coworkers, and the general public in a regular work setting" and she will have difficulties dealing with "usual stressors encountered in a competitive work environment."  *Id.*[6]

### 3. Dr. Loose

Carney began seeing Dr. Michael Loose for psychiatric treatment on February 23, 2010. AR 537.  Carney continued to see Dr. Loose every two weeks to a month, for 15 to 20 minutes sessions, into 2017.  AR 28, 40.  Dr. Loose completed two Medical Source Statements, one in 2013 and one in 2015.  AR 537-39, 620-24.

In his May 2013 Short Form Evaluation for Medical Disorders, Dr. Loose opined that

---

[5] Tic Disorder NOS references Carney's Tourette's disorder. AR 672 ("Jamie's Tourette's involves physical tics…).

[6]  In his accompanying Medical Source Statement, Dr. Cushman opined that Carney's mental disorders do not significantly limit her from remembering short and simple instructions, and her abilities to understand interact with the public and be aware of normal hazards and react appropriately were "fair."  AR 667-78.  However, he concluded that Carney's capacity was "poor" in the following areas: understanding and remembering detailed or complex instructions; sustaining and concentrating on carrying out instructions; working without supervision; interacting with the coworkers or supervisors; adapting to changes in the workplace; adapting to using public transportation or traveling to unfamiliar places.  AR 667-68.

United States District Court
Northern District of California

Carney's abilities to understand, remember, and carry out complex instructions; maintain concentration, attention, and persistence; perform activities within a schedule and maintain regular attendance; and respond appropriately to changes in a work setting were all "fair." AR 539. However, he opined that given her conditions, her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms" was poor. *Id*.

In his April 15, 2015, Medical Source Statement, Dr. Loose opined that Carney has "severe" limitations in the following work-related mental abilities: performing activities within a schedule; maintaining regular attendance and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness. AR 621-22.

Dr. Loose also opined that Carney has "moderately severe" limitations in the following additional work-related mental abilities: understanding and remembering detailed instructions; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being unduly distracted by them; interacting appropriately with the general public; accepting instructions and to respond appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; setting realistic goals or making plans interpedently of others. AR 621-22.

In the comments section of his 2015 Medical Source Statement, Dr. Loose explained that over his five years of seeing Carney he treated her with cognitive behavioral therapy and multiple trials of psychopharmacological drugs. AR 624. He explained that while she has been compliant with treatment recommendations "[s]he has never been without sufficient symptoms" that cause the identified limitations on her cognition and functioning. *Id*.

On September 1, 2017, Dr. Loose provided a clinical update stating that Carney continued to struggle significantly with symptoms related to her obsessive compulsive disorder, Tourette's

Disorder, ADHD, Major Depressive Disorder, and polysubstance abuse.  AR 28.  He opined that

Carney "fulfills the criteria for permanent disability." *Id.*  He explained that she had made "little

to no progress" with securing employment, changing her normal routine of performing only

simple tasks and chores, drawing in her spare time, or building new relationships. *Id.*  He stated

that "challenges beyond her rudimentary routine have been met with failure including tantrums

and escalations when she threatens to harm herself." *Id.*  He concluded that while Carney has

been compliant with medications, appointments, and "various forms of therapeutic approach

attempting to mitigate her symptoms" "her prognosis remains poor, given her poor level of

functioning in most areas of life and particularly related to her interpersonal skills." *Id.*

### 4.    MFT Hall

MFT Tara Hall[7] was Carney's treating therapist from January 23, 2013 to March 4, 2015.

AR 568, 614.  During this period Carney regularly saw MFT Hall for 45-minute sessions.[8]  AR 40.

On April 16, 2015, MFT Hall completed a Medical Source Statement concerning the nature and

severity of Carney's mental impairments. AR 615-619.  She opined that Carney has "severe"

limitations in the following work-related mental categories: sustaining an ordinary routine without

special supervision; working in coordination with or proximity to others without being unduly

distracted by them; completing a normal workday and workweek without interruptions from

psychologically based symptoms; performing  at a consistent pace without an unreasonable

number and length of rest periods; accepting instructions and responding appropriately to criticism

from supervisors; getting along with co-workers or peers without unduly distracting them or

exhibiting behavioral extremes.  AR 616-17.

MFT Hall also opined Carney has "moderately severe" limitations in the following areas:

maintaining attention and concentration for extended periods; performing activities within a

schedule, maintaining regular attendance and being punctual within customary tolerances;

interacting appropriately with the general public; asking simple questions or requesting assistance;

---

[7] MFT Hall's name appears in the record both as Tara Siebelist and Tara Hall.

[8] Carney testified to seeing MFT Hall approximately every month, following her appointments
with Dr. Loose. AR 41.

United States District Court
Northern District of California

1  maintaining socially appropriate behavior and adhering to basic standards of neatness and

2  cleanliness; traveling in unfamiliar places or using public transportation.  AR 616-17.

3  **III.     ALJ HEARINGS AND DECISIONS**

4        The initial ALJ hearing was held on April 20, 2015, and the ALJ issued her initial decision

5  denying benefits on August 19, 2015.  AR 168-178.  In that initial decision, the ALJ determined at

6  step two that Carney has the following severe impairments: attention deficit disorder, depressive

7  disorder, anxiety disorder, and obesity. AR 172.  At step three, the ALJ determined that Carney

8  did not suffer from an impairment or combination of impairments that met or equaled one of the

9  listed impairments. AR 172-73.  The ALJ found that Carney has the residual functional capacity to

10 perform a full range of work at all exertional levels but with the following nonexertional

11 limitations: "she cannot have regular interaction with the general public or perform teamwork with

12 co-workers.  She can have up to occasional interaction with supervisors.  She is limited to simple,

13 routine tasks with a maximum specific vocational preparation (SVP) code of two."  AR 174.

14 Considering that RFC, the ALJ determined that there are jobs that in significant numbers in the

15 national economy that Carney could perform and that Carney was, therefore, not disabled.  AR

16 177-78.

17       After the case was remanded back to the same ALJ by the Appeals Council, a second

18 hearing was held on August 16, 2017.  AR 29.  A different VE appeared and testified that an

19 individual possessing all of Carney's nonexertional limitations accepted by the ALJ but who also

20 missed two or more days per month (either for failing to show up or who showed up but had to

21 leave because of emotional reactivity) would be "work preclusive."  AR 68, 70.[9]

22       In the decision following that hearing, dated January 24, 2018, the ALJ again found

23 Carney was not disabled.  At step two, the ALJ found that Carney had the following severe

24 impairments: attention deficit disorder (ADD), Tourette's disorder, depressive disorder, and

25

26 [9] In Carney's initial ALJ hearing, when the first VE was asked to assess the employment
   opportunities of a hypothetical individual having limitations adopted by MFT Hall but ultimately
27 rejected by the ALJ, the VE opined, "being unable to perform on a regular basis is one negative,
   needing special instruction on top of that and then being distracted or having psychological
28 problems during the workday would lead to termination, so that person with the profile would be
   unemployable."  AR 114-15.

United States District Court
Northern District of California

anxiety disorder.  AR 13.  At step three, the ALJ considered the "paragraph B" criteria and concluded that Carney did not suffer from an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 13-14. Addressing the Paragraph B criteria regarding "understanding, remembering, or applying information," the ALJ determined that Carney has only a mild limitation, based on her high intelligence, her graduation from high school and attendance at community college, and based on the results of Dr. Kiefer's conclusion that she was able to understand, remember, and carry out very short and simple instructions.  AR 14.  In evaluating Carney's ability to "interact with others," the ALJ concluded that Carney has a "moderate to marked" limitation, given her self-reports and reports to the consultative examiners.  *Id.*  With regard to "concentrating, persisting, or maintaining pace," the ALJ determined that Carney has a moderate limitation, based on the improvement to her ADD with medications and her ability to play video games for 8 to 10 hours a day.  *Id.*  With regard to "adapting or managing herself," the ALJ found only a "mild" limitation, given Carney's testimony regarding her daily life activities.  *Id.*

The ALJ then adopted an RFC that was substantially similar to her prior determination: Carney could perform a full range of work at all exertional levels but with nonexertional limitations that she can perform simple repetitive tasks equivalent to unskilled work with a "maximum Specific Vocational Preparation (SVP) of 2," can have no regular interaction with the general public and up to occasional interaction with supervisors.  AR 15.

In determining that RFC, the ALJ discounted Carney's subjective testimony regarding the intensity, persistence, and limiting effects of symptoms, because Carney's testimony was not consistent with the medical evidence and because of Carney's ability to engage in "somewhat normal" daily activities, including attending community college (where she received passing grades in at least one academic and one nonacademic course), spending time with one friend, being in a long-distance relationship, playing video games for 8-10 hours a day, and doing art (noting that Carney's her art was displayed in a coffee shop).  AR 15-16.  Carney's subjective statements were also discounted because of her "conservative" medical treatment and evidence showing that her conditions improved when she took her medication and attended appointments

1    consistently.  AR 16.[10]

2          Turning to the opinion evidence, the ALJ gave limited weight to Carney's treating

3    psychiatrist Dr. Loose.  AR 17.  The ALJ discounted Dr. Loose's 2015 and 2017 Medical Source

4    Statement opinions regarding Carney's significant limitations because he had not provided enough

5    support for the "extreme limitations assessed" and there was no evidence that Dr. Loose had

6    performed "mental examinations" or independent mental assessments.  *Id*.  Further, the ALJ noted

7    that Dr. Loose had not addressed or discounted Carney's substance abuse as a disqualifying source

8    of some of Carney's supposed limitations.  *Id*.[11]

9          The ALJ gave partial weight to the treating therapist MFT Hall's opinions regarding

10   Carney's ability to perform simply routine tasks, but rejected MFT Hall's opinions regarding

11   Carney's inability to accept instructions from supervisors and severe problems with sustaining an

12   ordinary routine and completing a normal workday/week.  AR 17-18.  The ALJ faulted MFT Hall

13   for failing to explain why Carney could not accept instruction from supervisors (when Carney was

14   able to comply with the requests of the consultative examiners) and because Hall did not address

15   Carney's substance abuse. *Id*.

16         The ALJ gave limited weight to the examining opinions of Dr. Kiefer, including his

17   opinion that Carney would likely "emotionally deteriorate" in a work environment and had poor

18   ability to accept instructions and respond appropriately.  AR 18.  The ALJ concluded that these

19   findings were "not consistent with the balance of the substantial record" because Carney was

20   cooperative with Dr. Kiefer during the exam and his opinion about her workplace deterioration

21   was "speculative" and likely based on Carney's subjective testimony because she had never

22   worked and engaged in somewhat normal daily activities.  AR 18.

23         The ALJ gave partial weight to the opinion of the examining physician Dr. Cushman,

24

25   _____

     [10] The ALJ's decision also mentions Carney's use of substances like alcohol, marijuana,
26   recreational use of LSD, and opiates, as an apparent basis to reject Carney's subjective testimony.
     *See* AR 16 (referencing evidence of "alcohol… use/abuse and problems with THC…[s]he reported
27   she was planning on taking a hit of acid….[u]rine results have showed various opiates…[s]he
     reported using her mother's pain medication.").

28   [11] The ALJ did not address Dr. Loose's September 1, 2017 letter.  AR 28.

1    rejecting his opinions that Carney would need extensive pre-vocational training and ongoing

2    supervisor, as well as his opinion that Carney would have difficulties with usuals stressors

3    encountered in a competitive work environment.  AR 19.  The ALJ rejected those limitations as

4    "not fully consistent" with the record (including the GAF of 60) or with Dr. Cushman's

5    examination findings given Carney's ability to respond to Dr. Cushman's questions and her "wide

6    range" of reported independent activities, including her ability to attend community college.  *Id*.

7            Instead, the ALJ gave "great weight" to two opinions of State agency medical consultants

8    who did not examine Carney because their opinions were "consistent with the record as a whole."

9    AR 19.  Those opinions were provided in 2013 and 2014, prior to MFT Hall's Medical Source

10   Statement, Dr. Loose's continuing treatment notes, his 2015 Medical Source Statement and 2017

11   explanatory letter, and Dr. Cushman's examination.

12           Finally, the ALJ gave limited weight to the statements made by Carney's mother, Rhonda

13   Carney.  *Id.*  The ALJ found that Rhonda gave conclusory statements that lacked support from

14   independent objective factors and essentially repeated her daughter's discounted allegations. *Id*.

15           Based on the affirmed RFC, the ALJ concluded again that Carney could perform jobs that

16   exist in significant numbers in the economy and was not entitled to benefits. AR 21.

17                                    **LEGAL STANDARD**

18   **I.      DISABILITY DETERMINATION**

19           A claimant is "disabled" as defined by the Social Security Act if: (1) she "is unable to

20   engage in any substantial gainful activity by reason of any medically determinable physical or

21   mental impairment which can be expected to result in death or which has lasted or can be expected

22   to last for a continuous period of not less than twelve months," and (2) the impairment is "of such

23   severity that he is not only unable to do his previous work but cannot, considering his age,

24   education, and work experience, engage in any other kind of substantial gainful work which exists

25   in the national economy." 42 U.S.C. §§ 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159

26   (9th Cir. 2012).  To determine whether a claimant is disabled, an ALJ engages in a five-step

27   sequential analysis as required under 20 C.F.R. § 404.1520(a)(4)(i)-(v).

28           In the first two steps of the evaluation, the claimant must establish that he or she (1) is not

United States District Court
Northern District of California

performing substantial gainful activity, and (2) is under a "severe" impairment. *Id*. at §
416.920(a)(4)(i)-(ii). An impairment must have lasted or be expected to last 12 months in order to
be considered severe. *Id.* at § 416.909. In the third step, the claimant must establish that his or her
impairment meets or medically equals a listed impairment described in the administrative
regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of the
listed impairments, before proceeding to the fourth step, the ALJ is to make a residual functional
capacity determination based on all the evidence in the record; this determination is used to
evaluate the claimant's work capacity for steps four and five. *Id.* § 416.920(e). In step four, the
claimant must establish that his or her impairment prevents the claimant from performing relevant
work he or she did in the past. *Id.* § 416.920(a)(4)(iv). The claimant bears the burden to prove
steps one through four, as "[a]t all times, the burden is on the claimant to establish [his]
entitlement to disability insurance benefits." *Id.* (alterations in original). Once the claimant has
established this prima facie case, the burden shifts to the Commissioner to show at the fifth step
that the claimant is able to do other work, and that there are a significant number of jobs in the
national economy that the claimant can do. *Id.* at §§ 416.920(a)(4)(v), (g); 416.960(c).

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a court reviews the ALJ's decision to determine whether the
ALJ's findings are supported by substantial evidence and free of legal error. *Smolen v. Chater*, 80
F.3d 1273, 1279 (9th Cir.1996); *see also DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991)
("We review the ALJ's determination ... to determine whether it was supported by substantial
evidence and whether it was based on the proper legal standard.").  Substantial evidence means
"'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521–
22 (9th Cir. 1996) (internal quotations and citation omitted).  Substantial evidence is "such
relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389 (1971) (internal quotations and citation omitted).

A court must review the record as a whole and consider adverse as well as supporting
evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is
susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See*

United States District Court
Northern District of California

1   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a

2   reviewing court must consider the entire record as a whole and may not affirm simply by isolating

3   a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (internal quotations and

4   citation omitted); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). If the legal error is

5   harmless, then a reversal is unwarranted. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.

6   2012) ("We may not reverse an ALJ's decision on account of an error that is harmless."). An error

7   is harmless when it is "inconsequential to the ultimate nondisability determination." *Molina*, 674

8   F.3d at 1115 (internal quotations and citation omitted).

9                                    **DISCUSSION**

10  **I.      WEIGHING OF MEDICAL OPINION EVIDENCE**

11         **A.      Dr. Kiefer and Dr. Cushman**

12         Carney argues first that the ALJ improperly discounted the opinions of examining

13  consultants Dr. Kiefer and Dr. Cushman. She challenges the ALJ's rejection of Dr. Kiefer's

14  opinions that Carney would perform poorly in: (i) remembering detailed and complex instructions;

15  (ii) accepting instructions from a supervisor and responding appropriately; and (iii) interacting

16  with coworkers, as well as his opinion (iv) that Carney had a high change of emotionally

17  deteriorating in the work environment. AR 534. She also challenges the ALJ's rejection of Dr.

18  Cushman's opinions that Carney would perform poorly in: (i) understanding and remembering

19  detailed or complex instructions; (ii) interacting with the public, coworkers and supervisors; (iii)

20  adapting to changes in the workplace; (iv) have sustained ability to attend and concentrate, to work

21  without supervision, and carry out instructions; (v) need extensive pre-vocational training

22  activities to and ongoing supervision; and (vi) difficulties dealing with "usual stressors

23  encountered in a competitive work environment." AR 667-68, 674.

24         To start, it is hard to see how the ALJ could credit opinions by two consultants over Drs.

25  Keifer and Cushman when the consultants did not examine Carney nor have the opportunity to

26  consider more up to date opinions and evidence from the doctors and the MFT who examined and

27  treated Carney. Regardless, because Drs. Kiefer and Cushman both examined Carney, the ALJ

28  could only discount their uncontradicted opinions based on "clear and convincing" reasons or by

                                             14

1 | providing "specific and legitimate reasons" to discount any contradicted opinions.  *Lester v.*

2 | *Chater*, 81 F.3d 821, 834-35 (9th Cir. 1995).  The ALJ did not identify specific and legitimate

3 | reasons to discount their opinions.

4 |   The ALJ discounted the opinions because they were inconsistent with the "record as a

5 | whole," not supported by examination findings, based on Carney's subjective testimony, and

6 | speculative given Carney had never been in the workforce and Carney had "somewhat normal"

7 | daily life activities.  AR 18.  These general reasons do not hold up under examination.  Drs. Kiefer

8 | and Cushman's discounted opinions are consistent with those of Carney's long-time treating

9 | psychiatrist Dr. Loose.  While the ALJ pointed to treatment notes where Dr. Loose or MFT Hall

10 | noted Carney had "improvements" in her depression or anxiety based on medicine changes, AR

11 | 16, the ALJ never addressed Dr. Loose's overall conclusion that despite consistent treatment and

12 | compliance with the numerous medical trials Loose prescribed for Carney over the prior seven

13 | years "her prognosis remains poor."  AR 28 (2017 letter), 624 (comments to 2015 Medical Source

14 | Statement); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (cycles of

15 | improvement and debilitating mental health symptoms are common and it is an error for an ALJ to

16 | pick out a few isolated instances of improvement over a period of months or years and to treat

17 | them as a basis for concluding a claimant is capable of working).

18 |   As to the lack of "examination findings," the ALJ ignored that Dr. Cushman performed

19 | examinations (including the Wechsler Adult Intelligence Scale IV, Trails A and B, the Wechsler

20 | Memory Scale IV, Childhood Autism Rating Scale-2, and Wide Range Achievement Test 4) to

21 | support his findings.  AR 672.  The ALJ did not identify any specific opinion of Dr. Cushman's

22 | that was contradicted by an exam he conducted.  The ALJ's rejection of Drs. Kiefer and

23 | Cushman's opinions regarding Carney's workplace limitations simply because Carney was

24 | responsive to questions asked during their one-time examinations is not a specific and legitimate

25 | reason sufficient to discount their opinions of how she would perform in a competitive work

26 | environment.[12]

27

28 | [12]  Even when speaking with Dr. Cushman, Carney remarked that she felt anxious because she did not know him and Dr. Cushman noted she "can clearly be in a world of her own."  AR 669-70.

15

Finally, the evidence regarding Carney's daily life activities did not provide support for the ALJ to discount Drs. Kiefer and Cushman's opinions.  The Commissioner argues that the ALJ was entitled to rely on Carney's identified history of attending community college and high school without special resources, her ability to drive regularly to attend medical appointments and run errands, and her ability to perform general daily routines as valid reasons for discounting Drs. Kiefer and Cushman's opinions.  While the Ninth Circuit has recognized that an inconsistency between a physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the physician's opinion, *Morgan v. Comm'r of the SSA*, 169 F.3d 595 (9th Cir. 1999), a claimant's ability to conduct daily activities is not itself proof of capability in the workplace. *Ghanim v. Colvin*, 763 F.3d 1154 (9th Cir. 2014) ("Although [the claimant] performed some basic chores and occasionally socialized, the record also reveals that he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments[…]limited daily activities are not in tension with the opinions of his treating providers.")

Carney's daily activities are not inconsistent with Dr. Kiefer and Dr. Cushman's opinions. While Carney testified that she helps with some chores, for example occasionally taking care of the family pets with the assistance of her sister and putting away dishes, those limited tasks occur in the comfort and supervision of her home and often, as with her personal hygiene, only with the insistence of her family members.  AR 47, 89.  The ALJ relied on Carney's "driving regularly," but the testimony was that Carney drove 3 to 4 times a week to perform errands (usually at her mother's direction) or to attend appointments, and her driving includes periods of road rage.  AR 46, 98, 463.  While she did attend community college without special extra resources, she took only 16 courses over three years, had only a cumulative GPA of 1.659, and withdrew from two and failed four classes.  AR 462.  The record as a whole, according to the evidence from Carney's

More broadly, Dr. Loose, Dr. Cushman, Dr. Kiefer, and Rhonda Carney all opined or provided evidence that Carney has a limited ability to accept instructions and faces difficulty in responding appropriately.  AR 620-24 (Dr. Loose opines a "moderately severe" limitation); 667-74 (Dr. Cushman gives a "poor" rating for both her ability to "carry out instructions" and "interact with supervisors"); 530-34, 465 (Rhonda Carney stating "Jaymie needs constant reminders to do her chores and can't seem to follow through with anything. She can also get angry if we push her too hard with things that make her anxious, like cleaning her room.").

treating physician Dr Loose, her treating therapist MFT Hall, her mother, and herself, contains substantial, undisputed evidence that Carney has difficulty interacting with others and maintaining relationships.

The ALJ did not identify specific and legitimate reasons to discount the opinions as to limitations on Carney's ability to function in the workplace found by Drs. Kiefer and Cushman.

**B.    Dr. Loose**

Carney also argues that the ALJ improperly rejected and gave limited weight to the opinions of her treating physician Dr. Loose.  As noted above, Dr. Loose was Carney's treating psychiatrist and commented in 2013 and 2015 that Carney was significantly limited in her ability complete a normal workday/workweek and severely limited in her interactions with both the public and supervisors.  AR 539, 621-22.  Dr. Loose reaffirmed in 2017 that Carney's "prognosis remains poor, given her poor level of functioning in most areas of life and particularly related to her interpersonal skills." AR 28.  The ALJ gave Dr. Loose's opinions "limited weight," primarily because he did not conduct any objective mental health "examinations" or identify any specific medical evidence upon which he based his opinions.  AR 17.  The Commissioner contends that this was appropriate, given that Dr. Loose's treatment notes were difficult to read and did not support the assessed limitations, and there was no evidence in the record of Dr. Loose conducting mental status examinations or independent medical assessment to support his limitations.  Cross-Mot. at 8.

Controlling weight is generally given to the opinion of a treating physician in disability determinations as it "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not inconsistent with substantial evidence in a claimant's file, then the opinion will be given controlling weight over the opinions of non-treating physicians.  *Id*.  Here, Dr. Loose's opinions are *consistent* with the opinions of examining physicians Drs. Kiefer and Cushman.  Moreover, at the time of his 2017 letter Dr. Loose had been Carney's treating

psychiatrist for seven years and had prescribed her various trials of psychopharmacological drugs and supportive cognitive behavioral therapies, noting that she had been generally compliant with his treatment recommendations.  AR 28, 537, 624.  Neither the ALJ nor the Commissioner argue that Dr. Loose's treatments (cognitive behavioral therapy and prescribed medications) were inconsistent with or conservative *for* the conditions Carney had; OCD, Tourette's Disorder, ADHD, and Major Depressive Disorder.  *See* AR 28.  There is no support for the Commissioner's argument that a treating physiatrist must perform some kind of separate "examination" or test to justify his opinions regarding limitations based on his undisputed diagnoses and a detailed history of treatment that is based on his personal observations and reports that were necessarily provided by the claimant and her family.

Finally, it was erroneous for the ALJ to discount Dr. Loose's opinions because Dr. Loose did not address the impact of Carney's substance abuse.  AR 17.  The April 2015 Medical Source Statement completed by Dr. Loose instructs physicians to "not include limitations which would go away if the individual stopped using drugs or alcohol."  AR 620.  In that same document, Dr. Loose explained in the "comments" section that in the prior five years Carney had never been without symptoms impacting her cognition and functioning to allow her to function, despite being compliant with medications and treatment recommendations.  AR 624.  Dr. Loose was directed not to consider substance abuse; he found Carney limited in significant ways despite her compliance with medications and other treatments.[13]

The ALJ erred in rejecting the consistent opinions of Drs. Kiefer, Cushman, and Loose.

## II.   WEIGHING MFT HALL'S OPINIONS

Carney argues that the ALJ improperly discounted the opinions of MFT Hall, whom she

---

[13] The ALJ and Commissioner's discounting of Dr. Loose's opinions based on the illegibility of some of Dr. Loose's treatment notes cannot sustain the ALJ's decision.  If those notes were illegible, the ALJ had a duty to develop the record to get clarity.  *See, e.g., Garcia v. Colvin*, 2015 U.S. Dist. LEXIS 159590 ("The ALJ erred in discarding [the doctor's] assessment on the basis that his treatment notes were illegible… because the ALJ was duty-bound to seek clarification from the medical source before discarding it based on 'illegible handwriting.'"); *Williams v. Colvin*, 2015 U.S. Dist. LEXIS 152783 ("In the absence of legible records, the ALJ had a duty to develop the record…").

saw for therapy for 45-minute sessions at least once a month for two years.  AR 40.  Specifically, she challenges the ALJ's discounting of Hall's conclusions, consistent with the other opinion evidence, that Carney would have moderately severe or severe problems with: (i) maintaining attention and concentration for extended periods; (ii) maintaining activities within a schedule; (iii) sustaining an ordinary routine and completing a normal workday/week; (iv) working in coordination with others; and (v) social interactions.  AR 616-18.  Carney contends that the ALJ erred by not giving "germane reasons" for rejecting these opinions.  Mot. at 20.[14]

The Commissioner argues that the ALJ was entitled to discount MFT Hall's opinions because the evidence showed Carney could respond appropriately to the consultative examiners' questions and accepted the recommendations from her medical providers, and MFT Hall did not address Carney's substance abuse.  However, as with Dr. Loose, the Medical Source Statement MFT Hall filled out directed her to ignore limitations that would go away if there were no drug or alcohol use.  AR 615.  That is not, therefore, a germane reason.  Nor is Carney's inability to follow directions from a supervisor, which the ALJ discounted because Carney was able to respond appropriately to questions from the one-time consultative examiners.  The ability to be cooperative during an examination on one day, by itself, does not equate to an ability to accept sustained directions from a supervisor in a competitive workplace.  The consistent evidence is that Carney had difficultly sustaining long term relationships outside of her family (with whom she had an undisputed contentious relationship).  All of her providers and examiners opined that Carney would have difficulty accepting instruction and responding appropriately in the workplace.

The ALJ did not provide germane reasons for discounting MFT Hall's opinions.[15]

## III.   REMEDY

In the Ninth Circuit, remand for further proceedings is the typical remedy when the ALJ

---

[14] Carney and the Commissioner agree that because MFT Hall is an "other source" the ALJ needed only to provide "germane reasons" for discounting those opinions.  However, the ALJ was still required to consider numerous factors in deciding the weight to give MFT Hall, including her treatment relationship with Carney (the length, nature, and extent of the treating relationship), the supportability of her conclusions, and her specialization.  *See* 20 C.F.R. § 404.1527(c).

[15] Given the significant errors committed by the ALJ, I need not reach Carney's other arguments that the ALJ erred in discounting Carney and her mother's subjective testimony.

United States District Court
Northern District of California

United States District Court
Northern District of California

has erred except where the "credit-as-true" standard can be met.  Under that standard, remand for determination of and payment of benefits is appropriate where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  In addition, even if these three factors are satisfied remand for further proceedings is appropriate where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Id*. at 1021.

The Commissioner argues against applying the credit-as-true rule here given unspecified "conflicts among the medical opinion evidence."  But other than the two agency consultant opinions that were made prior to consistent opinion evidence from treating and examining medical sources, there is no conflict among the opinion evidence.  All three factors support applying the credit-as-true rule in this case.  I have already identified the significant errors the ALJ made.  There is no dispute that if Drs. Kiefer, Cushman, Loose and MFT Hall's opinions were credited, plaintiff's limitations would be "work preclusive" as established by the testimony of both VEs.  And the agency has already required two consultative examinations of Carney that *support* her claim.  Further proceedings would serve no useful purpose.

The Commissioner also argues also that the record creates serious doubts of disability given plaintiff's "normal mental health symptoms when compliant with" medications and appointments.  Cross-Mot. at 15.  That argument is *directly contrary* to the repeated conclusions of Carney's treating psychiatrist Dr. Loose in both 2015 and 2017.  Reviewing the record as a whole, there are no serious doubts that Carney is in fact disabled.

**CONCLUSION**

Plaintiff's motion for summary judgment is GRANTED.  Defendant's motion is DENIED. This case is remanded to Commissioner for the sole purpose of calculating and awarding benefits.

**IT IS SO ORDERED.**

Dated: March 15, 2021



William H. Orrick
United States District Judge